650 F.Supp. 12 (1986)
UNITED STATES FOOTBALL LEAGUE PLAYERS ASSOCIATION, AFL-CIO, a labor organization, Plaintiff,
v.
UNITED STATES FOOTBALL LEAGUE, an unincorporated association; New Orleans Breakers Limited Partnership dba Breakers, Inc., aka Portland Breakers; Joseph C. Canizaro; Joseph C. Canizaro Interests, a proprietorship, Defendants.
Civ. No. 85-1661-PA.
United States District Court, D. Oregon.
September 9, 1986.
Gene B. Mechanic, Goldberg, Mechanic & Goldstein, Portland, Or., for plaintiff.
Dean DeChaine, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for defendant U.S. Football League.
Gregory W. Byrne, Portland, Or., for defendant New Orleans Ld. Partnership dba Breakers, Inc., aka Portland Breakers.
Kenneth E. Roberts, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for defendants Joseph C. Canizaro and Joseph C. Canizaro Interests.

*13 OPINION
PANNER, Chief Judge.
Plaintiff United States Football League Players Association (Association) brings this action pursuant to 29 U.S.C. § 185 and state law. Defendants are the United States Football League (League), the Portland Breakers (Breakers), Joseph Canizaro, and Joseph Canizaro Interests. In the second amended complaint, the Association alleges that the League is a "joint employer" with the Breakers, and as such is liable for player wages due under two arbitration awards. It also alleges that the League should be penalized pursuant to O.R.S. 652.150 for its failure to pay.
The Association moves for partial summary judgment on the "joint employer" claim. The League submits a cross-motion for summary judgment. After oral argument, I requested that the parties supplement the record. I deny the Association's motion for partial summary judgment and grant the League's cross-motion for summary judgment.

BACKGROUND
The Association is an unincorporated labor organization. It is the bargaining representative of all professional football players within the League. The League is a nonprofit unincorporated association of professional football teams. The Breakers was a franchise member of the League.
The Breakers played the 1985 football season in Portland, Oregon. It failed to pay the players their wages for the last four games of the season. An arbitrator determined that the Breakers did not have a "colorable claim" for its failure to pay the players under the Collective Bargaining Agreement (Agreement), and required that all payments be made by July 30, 1985. The arbitrator also entered an award in favor of player Louis Bullard under his multi-year guaranteed contract, and ordered the Breakers to pay Bullard wages due under the contract. The Association seeks to hold all defendants liable for these awards.
In 1983, the Association filed a petition before the National Labor Relations Board (Board) in which it sought to represent all professional football players employed by the League and each member club. Before the Board, the Association contended that the League and each club are joint employers of the players of each team. The League asserted that individual clubs are autonomous entities, and that each club is the sole employer of its players.
The Board found "the League through its constitution and the commissioner, exercises a significant degree of authority over the labor relations of member clubs, sufficient to warrant a finding of joint employer status." (Plaintiff's Ex. 2 at 6.) It concluded that the League and clubs are collectively an employer. The Board further determined that the football players within the League formed an appropriate unit for collective bargaining and a representation election.
The League, "as the sole and exclusive bargaining representative of present and future employer member clubs," and the Association entered into the Agreement on March 29, 1985. (Plaintiff's Ex. 4 at 5.) Article XI of the Agreement provides that a uniform player contract form will be used in all player signings. The contract provides that it is between the club and the player. It further provides that "for the performance of Player's services and all other promises of Player, Club will pay player the following compensation...." (Plaintiff's Ex. 4 at 103.) The contract provides blanks for the player's signature and for the signature of a club representative. It also has a space for the League commissioner's certification.

STANDARDS
Summary judgment is appropriate if the court finds that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). There is no genuine issue of material fact where the nonmoving party fails "to establish the existence of an element essential to that party's case, and *14 on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, ___ U.S. ___, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party has the burden of establishing the absence of a genuine issue of material fact. Securities and Exchange Commission v. Murphy, 626 F.2d 633, 640 (9th Cir.1980). It may meet this burden by showing that "there is an absence of evidence to support the nonmoving party's case." Celotex 106 S.Ct. at 2554.
All reasonable doubts as to the existence of genuine issues must be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Where different ultimate inferences can be drawn, summary judgment is inappropriate. Sankovich v. Insurance Company of North America, 638 F.2d 136, 140 (9th Cir.1981).

DISCUSSION
The Association seeks to hold the League liable for the arbitration award rendered against the Breakers. The arbitrator determined that the Breakers' failure to pay player wages violated the collective bargaining agreement.
Two entities may be bound by a union contract signed by one of them if they are a "single employer" and the employees of each constitute a single bargaining unit. Brotherhood of Teamsters v. California Consolidators, 693 F.2d 81, 82-83 (9th Cir.1982), cert. denied, 469 U.S. 887, 105 S.Ct. 263, 83 L.Ed.2d 199 (1984). The Association contends that because both components of the single employer test have been fairly and fully litigated before the Board, the collateral estoppel doctrine should apply to plaintiff's claim against the League.
The parties use the terms "joint employer" and "single employer" interchangeably, and do not distinguish between the two concepts. While there is some confusion in the area, the "joint employer" and "single employer" doctrines are distinct. Such a distinction is critical in this case.
A "single employer" relationship exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a "single employer." The question in the "single employer" situation, then, is whether the two nominally independent enterprises in reality, constitute only one integrated enterprise.

NLRB v. Browning-Ferris Industries, 691 F.2d 1117, 1122 (3rd Cir.1982) (emphasis in the original). The single employer standard is relevant when "separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise." See NLRB v. Deena Artware, 361 U.S. 398, 402, 80 S.Ct. 441, 443, 4 L.Ed.2d 400 (1960).
Four factors are considered in determining whether two business entities are a single employer: (1) integration of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. NLRB v. Don Burgess Construction, 596 F.2d 378, 384 (9th Cir.1979), cert. denied, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979). No one factor is controlling. Id. "Single employer status ultimately depends on `all circumstances of the case' and is characterized as an absence of an `arm's length relationship found among unintegrated companies.'" Id. at 384 (citations omitted).
In contrast, a joint employer relationship does not involve a single integrated enterprise. Rather the joint employer concept assumes that the employers are what they appear to be  separate legal entities that have merely chosen to codetermine important matters governing the employer-employee relationship. Browning-Ferris, 691 F.2d at 1122.
"In `joint employer' situations no finding of a lack of arm's length transaction or unity of control or ownership is required, as in `single employer' cases ... [I]t is rather a matter of determining *15 which of two, or whether both [entities] control, in the capacity of employer, the labor relations of a given group of workers." NLRB v. Condenser Corp. of America, [128 F.2d 67, 72 (3d Cir.1942)] (citations omitted). The basis of the finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.
Id. at 1122-23. This circuit examines whether "an employer exercises authority over employment conditions which are within the area of mandatory collective bargaining." Sun-Maid Growers of California v. NLRB, 618 F.2d 56, 59 (9th Cir. 1980).
Here, the Board determined that the League and member clubs are joint employers, finding that the League exercises a significant degree of authority over the labor relations of the clubs. The Board concluded that the League and the clubs were collectively an "employer" subject to the Board's jurisdiction under the National Labor Relations Act. See 29 U.S.C. § 152(2).
The Board stated that the "critical factor" governing a joint employer relationship "is the control one party exercises over the labor relations of the other," and its factual findings reflect this focus. (Plaintiff's Ex. 2 at 5.) The Board did not make an independent inquiry into the other criteria  integration of operations, common management, and common ownership  important to the single employer analysis. It made no finding that the League and clubs are in reality a single integrated enterprise.
The Association argues that collateral estoppel effect should be given the Board's findings with respect to the single employer issue. Contrary to the Association's assertion, however, the Board made no findings on the single employer issue. Thus the collateral estoppel doctrine cannot apply here. See, e.g., United States v. ITT Rayonier, Inc., 627 F.2d 996, 1000 (9th Cir.1980) (issue must be actually litigated and necessarily determined).
Moreover, the Association cites to no facts in the record to support the relevant single employer factors. The Association submits the affidavit of Douglas Allen. Allen states that the League took "managerial control" of one of the clubs for a period of time. An allegation that the League, in an isolated instance, took control of a single team does not raise an inference that the League and the Breakers are a single employer. Viewed in the light most favorable to the Association, the record does not support an independent finding that the League and the Breakers are a single employer.
When the Board finds that two entities are a single employer, it makes the determination that two entities are in fact a single integrated enterprise, thus it is appropriate to bind both entities to the labor agreement. On the other hand, when as here, the Board finds that two entities are joint employers, it does not determine that the two are an integrated operation. Rather, it assumes that they are separate legal entities. The Board's finding that the League and the clubs are joint employers provides no basis for holding the League liable for player wages.
The uniform player contract specifically provides that it is the club's obligation to pay player wages. Neither the contract nor the Agreement contain a provision that can be read to hold the League liable for player wages. The Association does not contend the contrary. It merely contends that it has not "waived" its right to hold the League liable as a single employer. As I have determined, the Association's single employer argument is inapplicable as is its waiver argument.
Under the National Labor Relations Act, an employer has a duty to bargain with the employees' representative over certain mandatory subjects. Clear Pine Mouldings, Inc. v. NLRB, 632 F.2d 721 (9th Cir. 1980), cert. denied, 451 U.S. 984, 101 S.Ct. 2317, 68 L.Ed.2d 841 (1981). The right to *16 bargain can be waived. American Distributing Co. v. NLRB, 715 F.2d 446, 450 (9th Cir.1983), cert. denied, 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984). The Association argues that there is no language in the Agreement that can be interpreted as a waiver of its right to hold the League responsible for player wages.
The cases cited by the Association deal with a waiver of a statutory right to bargain and are therefore distinguishable. American Distributing Co. v. NLRB, supra (waiver of right to bargain over pension plan); Road Sprinkler Fitters Local v. NLRB, 676 F.2d 826 (D.C.Cir.1982) (right to bargain over terms and conditions of employment). The Association has not established that its "right" to hold the League liable for player wages is within the mandatory subjects protected by the Act. Moreover, there is no indication that parties did not bargain over the League's liability. The evidence is to the contrary. The uniform players contract which is an appendix to the Agreement expressly provides that the Breakers are obligated to pay player wages. I find no support for the Association's waiver argument.
The League contends that even if it is a single employer, there is no basis for holding it liable under the Agreement. Although under the single employer doctrine, two nominally distinct entities are treated as one in certain circumstances, I find no authority for applying the doctrine in a context such as this where both entities have specifically identified obligations under the Agreement.
The League finds support in Metropolitan Detroit v. J.E. Hoetger, 672 F.2d 580 (6th Cir.1982). The Hoetger court noted that even if an entity were a joint employer, it may not necessarily follow that the entity would be liable under a collective bargaining agreement absent its contractually undertaking liability. The court was addressing the joint employer doctrine and not the single employer doctrine. I need not resolve the issue in the single employer context, however, as the record does not support a finding that the League and clubs are single employers.

CONCLUSION
There is no basis for holding the League liable for player wages. I deny the Association's motion for partial summary judgment and grant the League's cross-motion.