Caroline VOSS and Luis Del
Rio, Plaintiffs,

v.

SUPERMAIL/WESTERN UNION,
Western Union, Supermail
International, Defendants.

Civ. No. 87–0360–E.

United States District Court,
S.D. California.

Nov. 9, 1987.

Donald A. Phin, Phin & de la Flor, San Diego, Cal., for plaintiffs.

Jeffrey W. Gates, Richard D. DeLuce, Lawler, Felix & Hall, Los Angeles, Cal., Michael B. O'Harra, Nageley, O'Harra & Meredith, Inc., Sacramento, Cal., for defendants.

## MEMORANDUM DECISION

ENRIGHT, District Judge.

### STATEMENT OF FACTS

This is an action for breach of the covenant of good faith and fair dealing, misrepresentation, intentional infliction of emotional distress, defamation and age discrimination. Plaintiffs Caroline Voss and Luis Del Rio originally filed their complaint in state court against defendants The Western Union Telegraph Company (hereinafter "Western Union"), Supermail International ("Supermail"), Supermail/Western Union and Does 1-20.

On March 10, 1987, Western Union removed this case on the basis of purported federal question jurisdiction pursuant to 28 U.S.C. § 1441(a) and (b). On April 20, 1987, Supermail joined in the removal.[1] On August 26, 1987, plaintiffs noticed the instant motion to remand this action to state court.

Plaintiffs allege that they are former long-term employees of Western Union whose employment was terminated on January 31, 1986. According to plaintiffs, sometime in early January 1986, the Western Union office in San Diego was converted into an agency of Western Union, thereafter operated by Supermail under the name "Supermail/Western Union." Plaintiffs agreed to continue working for the new entity, although they say that they did so at a reduced salary and without the protections of the collective bargaining agreement under which they had been working. Plaintiffs report that Supermail promised that they would be allowed to remain with the company, and further promised wage hikes after three months of work. On January 27, 1986, plaintiffs received a copy of the "Supermail/Western Union Policies and Procedures," which sets out grounds for termination of employment.

On January 31, 1986, plaintiffs' employment was terminated. The stated reason was "Failure to Conform to Performance Standards—Telephone Etiquette, Speed of Service Requirements, and Mishandling of Sales Information."

On March 10, 1987, Western Union removed this action on grounds of federal question jurisdiction. According to Western Union, plaintiffs' claims fall under the collective bargaining agreement entered into between Western Union and Local 48 of the United Telegraph Workers. Inasmuch as plaintiffs' claims are alleged to arise under state law, they are therefore preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982) ("LMRA"). As mentioned, Supermail has joined in the removal of this action, alleging that plaintiffs used artful pleading to avoid the clear implications of their collective bargaining agreement. Plaintiffs' deny this allegation, and have now moved to remand this action to state

---

1. To date, no appearance has been made on behalf of "Supermail/Western Union," which plaintiffs allege to be a hybrid of Supermail and Western Union. At this point, therefore, it is unclear whether the entity Supermail/Western Union even exists.

court. For the reasons explained below, the court finds that plaintiffs' motion must be granted in part and denied in part. The claims against Western Union are found to arise under plaintiffs' collective bargaining agreement, and they are therefore properly characterized as federal questions. The claims against Supermail, however, are found not to arise under the collective bargaining agreement; those claims are now remanded to state court.[2]

## DISCUSSION

Plaintiffs' propose generally that when Western Union designated Supermail as its agent in San Diego, employees of the new Supermail/Western Union entity no longer fell under Western Union's collective bargaining agreement. Thus, although Western Union's ultimate liability for the harms alleged by plaintiffs could derive from its status as a principal (or perhaps a joint venturer), Western Union would not be liable to plaintiffs as an employer and therefore this action does not implicate the terms of the collective bargaining agreement which Western Union had formerly concluded with plaintiffs' union, the United Telegraph Workers. Because the claims in this case do not arise under a collective bargaining agreement, there is no cause to invoke section 301 of LMRA and there is no federal question. This case must therefore be remanded.

Western Union and Supermail have submitted separate, albeit similar, oppositions to plaintiffs' motion. Western Union declares that at all relevant times plaintiffs did remain subject to the collective bargaining agreement, because Western Union remained a joint employer even after the creation of the so-called Supermail/Western Union agency. Thus, plaintiffs ought not to be allowed to "artfully plead" in order to negate the effect of the collective bargaining agreement and escape the clear preemptive mandate of section 301.

Federal courts traditionally evaluate the propriety of federal question jurisdiction according to the "well-pleaded complaint" rule. Under this rule, federal question jurisdiction may not arise where the plaintiff's cause of action is preempted by federal law, because preemption is taken to be a defense, and not an element of a complaint. *Olguin v. Inspiration Consolidated Copper Co.,* 740 F.2d 1468, 1471 (9th Cir.1984). The "artful pleading" doctrine limits a plaintiff's choice of forum, however, by providing that a plaintiff may not avoid federal jurisdiction "simply by omitting from the complaint federal law essential to his claim, or by casting in state law terms a claim that can be made only under federal law." *Id.* That is, a complaint must be *well* -pleaded. Thus, under the artful pleading doctrine a court may look behind a plaintiff's complaint to ascertain the fundamental nature of the stated causes of action. Even where a plaintiff has set out only state law causes of action, and has not even mentioned a collective bargaining agreement, a court may determine that the causes of action in fact arise out of the collective bargaining agreement and are therefore preempted under section 301. *Id.*

If this court finds that plaintiff did plead artfully, and that their complaint in effect raises claims under the collective bargaining agreement, then the claims will be preempted under section 301. In *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985), the Supreme Court recently reaffirmed the powerful preemptive effect of section 301. Citing *Allis–Chalmers,* the Ninth Circuit has stated: "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties to a labor contract, that claim must either be treated as a § 301 claim ... or dismissed

---

**2.** If "Supermail/Western Union" is a legally cognizable entity, and if it is therefore a proper defendant in this action, then the claims against Supermail/Western Union, inasmuch as they derive from events occurring after plaintiffs' employment with Western Union had ended, do not arise under the collective bargaining agreement and therefore may be remanded. As mentioned above, however, at this time it does appear that Supermail/Western Union is a separate entity.

as preempted by federal labor-contract law." *Scott v. Machinists Automotive Trades District Lodge No. 190 of Northern California*, 827 F.2d 589, 591 (9th Cir. 1987).

Both Western Union and Supermail assert that resolution of plaintiffs' state law claims will be substantially dependent upon analysis of the collective bargaining agreement between Western Union and Local 48 of the United Telegraph Workers. This is because section 6.01 of the collective bargaining agreement specifically governs the suspension, demotion or discharge of employees. The section provides:

6.01 No employee shall be suspended, demoted or discharged without sufficient cause or reason. When an employee is suspended, demoted or discharged by the Company, the Union will be promptly notified in writing of the action and the reason therefor. The Company agrees that after the suspension, demotion or discharge of any employee, if the Union claims the employee to have been unjustly dealt with, the Company will meet promptly with the Union to determine any equities that may be involved. At the option of the Union, the first step of the grievance procedure may be omitted in such cases.

Exhibit A to Western Union's Opposition to Motion to Remand. Because plaintiffs have alleged that their employment was terminated without just cause, and because the collective bargaining agreement clearly provides a mechanism for review of termination decisions, Western Union and Supermail contend that resolution of plaintiffs' claims hinges upon interpretation of the collective bargaining agreement.

If this contention of Western Union and Supermail could be accepted at face value, plaintiffs' claims would be preempted and the court would be obliged to deny the instant motion to remand. The problem, however, is that it is not clear that plaintiffs remained subject to the collective bargaining agreement after the agency relationship was created between Western Un-

ion and Supermail (or Supermail/Western Union). This motion thus turns on one central issue: whether plaintiffs remained bound by the collective bargaining agreement after Western Union established its agency relationship with Supermail.

Western Union identifies this as the central issue, but hedges and states that its resolution "will depend on whether or not Western Union's alleged joint venture relationship with Supermail binds it to those [*i.e.* collective bargaining agreement] terms. This will require a judicial interpretation of section 301 of the LMRA." Opposition Memo, p. 9. Having said this, however, Western Union then proposes some situations in which collective bargaining agreements have been allowed to carry over to cover a new employer/employee relationship. One example is in the situation of joint employers, where both are held to be bound to the terms of a collective bargaining agreement arranged unilaterally. *See Bechtel Constructors Corporation v. Detroit Carpenters District Council*, 610 F.Supp. 1550, 1558–59 (E.D.Mich. 1985).[3]

In the Ninth Circuit, the "joint employer" doctrine is phrased as a "single employer" doctrine. That is, where two companies act as a single employer, the collective bargaining agreement concluded with one may bind the other. *See National Labor Relations Board v. Carson Cable TV*, 795 F.2d 879, 881–82 (9th Cir.1986); *Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271, 1276 (9th Cir.1984), *cert. denied*, 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985). As the court stated in *Carpenters'*, "Under the single employer doctrine, two companies may be bound by a union contract signed by one of them if they are a 'single employer' *and* the employees of each constitute a single bargaining unit." *Id.* (emphasis in original). The factors used to determine whether two or more entities are a single employer include: 1) interrelation of operations; 2) common management; 3) centralized control of labor relations; and 4) common ownership.

---

**3.** In *Bechtel,* the court found that the companies were not joint employers, although it reserved the right to amend this finding in light of any additional facts.

*Carson Cable TV, supra,* at 881. None of the factors is seen to be controlling and the presence of all four is not necessary to a finding of single employer status. *Id.* at 882. The ultimate determination of single employer status depends upon the totality of circumstances. *Id.*

■ In addition to the single employer doctrine, the Ninth Circuit also acknowledges a related "alter ego" doctrine. In *Gateway Structures, Inc. v. Carpenters 46 Northern California Counties Conference Board of United Brotherhood of Carpenters and Joiners of America, AFL–CIO,* 779 F.2d 485, 488 (9th Cir.1985), the court stated:

Under the alter ego doctrine, the court considers the interrelation of operations, common management, centralized control of labor relations, and common ownership. If these factors show that the transaction is a sham designed to avoid the obligations of a collective bargaining agreement, the nonsignatory employer will be bound.

Thus, the alter ego doctrine and the single employer doctrine function differently. The focus of the alter ego doctrine is on whether the collective bargaining agreement is purposely avoided through some technical change in operations. The single employer doctrine, on the other hand, does not appertain to the possible bad faith of the employers, but rather is concerned only with whether the employers negotiated the collective bargaining agreement as a single bargaining unit. *Carpenters', supra,* at 1276–77.

Finally, the Ninth Circuit also recognizes a "successor employer" doctrine, whereby a successor might be bound by its predecessor's collective bargaining agreement. In *Carpenters Southern California Administrative Corporation v. Russell,* 726 F.2d 1410, 1413 n. 3 (9th Cir.1984), the court noted: "[A]n employer who is found to be a 'successor' to a predecessor employer must recognize and bargain with the representative of employees covered by a collective bargaining agreement." In *Kallmann v. NLRB,* 640 F.2d 1094 (9th Cir. 1981), the Ninth Circuit devised a two-part test for determining whether an employer is a successor. Under the *Kallmann* test, "[A] company is deemed a successor if it hires most of its employees from the predecessor employer's work force and if it conducts essentially the same business as the predecessor." *Trustees for Alaska Laborers v. Ferrell,* 812 F.2d 512, 515 (9th Cir. 1987), *citing Kallmann,* 640 F.2d at 1100. And in analyzing the second part of the test (*i.e.* the "sameness" of business), courts look to several factors, including whether:

[a] there has been a substantial continuity of the same business operations; [b] the new employer uses the same plant; [c] the same or substantially the same work force is employed; [d] the same jobs exist under the same working conditions; [e] the same supervisors are employed; [f] the same machinery, equipment, and methods of production are used; and [g] the same product is manufactured or the same service [is] offered.

*Id., quoting National Labor Relations Board v. Jeffries Lithograph Co.,* 752 F.2d 459, 463 (9th Cir.1985). The court in *Alaska Laborers* went on to explain: "The successor employer is contractually obligated because a mere change in ownership, without an essential change in working conditions, should not operate to deprive employees of benefits achieved through collective action." *Id.* Despite this statement, however, the Ninth Circuit has also held that a successor is not bound by the substantive provisions of a collective bargaining agreement "unless it agrees to or assumes the contract." *Carpenters Southern, supra,* at 1413 n. 3.

■ Upon the instant facts, the court finds that plaintiffs' motion must be denied as to the claims brought against Western Union. That is, the court finds that any alleged wrongdoing on the part of Western Union would be actionable only under the collective bargaining agreement which governed the relationship between Western Union and the United Telegraph Workers. Plaintiffs concede that they were subject to the collective bargaining agreement while employed by Western Union *per se.* And,

as mentioned above, section 6.01 of the collective bargaining agreement clearly applies to instances of suspension, demotion or discharge. Therefore, the mechanism for relief provided by the collective bargaining agreement may be employed by plaintiffs in their effort to secure a remedy from Western Union.[4]

In order to determine that the alleged wrongs of Western Union would be actionable under the collective bargaining agreement, the court must necessarily resolve some of the ambiguities surrounding the transition of plaintiffs' employment from Western Union to Supermail. Thus, although the evidence submitted by the parties is somewhat inconclusive, the court finds for the purposes of the instant motion that there was a significant break in the employment relationship between plaintiffs and Western Union prior to plaintiffs' ultimate discharge on January 31, 1986, so that any wrongdoing by Western Union would have been actionable under the collective bargaining agreement. Specifically, from evidence submitted by Western Union it appears that Western Union laid plaintiffs off in early January 1986 and that they were then rehired by Supermail. The court does not now make formal findings of these facts, and in no way offers conclusions or suggestions regarding the eventual liability of Western Union. The court simply finds that any wrongdoing on the part of Western Union would in all likelihood have occurred during the period when plaintiffs were subject to the collective bargaining agreement. Therefore, given the probable existence of federal questions appertaining to construction of the collective bargaining agreement, remand of the claims against Western Union is inappropriate.

As to plaintiffs' claims against Supermail, however, the matter is more difficult. To ascertain whether the collective bargaining agreement carried over to cover plaintiffs as employees of Supermail, the court must examine the Ninth Circuit's three methods for justifying the extension of a collective bargaining agreement.

■ Upon reviewing the totality of the circumstances, the court finds that Western Union and Supermail were not, for purposes of extending the collective bargaining agreement, a "single employer." Plaintiffs have not shown that the Western Union and Supermail shared interrelated operations, common management or ownership, or control of labor relations. Nor have plaintiffs shown that the employees of Western Union and Supermail acted as a single bargaining unit. *See Carpenters' Local Union No. 1478, supra.* Therefore, they were not a single employer.

■ Likewise, plaintiffs have not shown that Supermail was an "alter ego" of Western Union. As explained in the pleadings, Supermail acts as a convenience/outlet store for Western Union and other communications operations. There is no indication that Supermail was established as a sham corporation so that Western Union might avoid the obligations of its collective bargaining agreement. Nor, more generally, is there any indication of bad faith on the part of either party in the establishment of the Supermail agency.

■ Finally, the court finds that under the *Kallmann* and *Alaska Laborers* decisions discussed above, Supermail was not a "successor" employer. Although again somewhat hampered by the brevity of the parties' accounts of plaintiffs' transition from Western Union to Supermail, the court finds the operations and management of Western Union and Supermail to be sufficiently separable to preclude a finding that Supermail is Western Union's successor. Moreover, the substantive provisions of the collective bargaining agreement would not carry over anyway, absent an agreement or assumption by the successor. Here, there has been no assumption by Supermail of Western Union's collective bargaining agreement.

---

4. Because the issue is not, on its own terms, before the court at this time, the court does not now rule upon whether the claims against Western Union are preempted under section 301. The court merely finds that, because the collective bargaining agreement applied to Western Union's participation in plaintiffs' termination, there exists a federal question sufficient to defeat plaintiffs' motion to remand. That is, as to Western Union, plaintiffs' claims appear to have been artfully pleaded.

**1216**

As mentioned above, for the purposes of this motion the court makes the limited finding that Supermail was a separate employer who hired plaintiffs under contracts not implicating the collective bargaining agreement previously concluded with Western Union. Therefore, plaintiffs' claims against Supermail do not arise under a collective bargaining agreement, do not raise a federal question, and must be remanded to state court.

CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing, and for the reasons explained above, the court hereby grants plaintiffs' motion as to the claims against Supermail only. Those claims are remanded to state court. The claims against Western Union are found to have been properly removed; plaintiffs' motion to remand those is denied. The case is therefore bifurcated, with the claims against Western Union to proceed in this court and the claims against Supermail to proceed in state court.