RHEEM MANUFACTURING
COMPANY, Appellee,

v.

CENTRAL STATES SOUTHEAST AND
SOUTHWEST AREAS PENSION
FUND, Appellant.

No. 95–1073.

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1995.

Decided Aug. 17, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied Sept. 22, 1995.

---

Terence G. Craig, Des Plaines, IL, argued for appellant.

Hugo Swan, Little Rock, AR, argued, for appellee.

Before MAGILL, Circuit Judge, HENLEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

MAGILL, Circuit Judge.

In this case arising under the Multi–Employer Pension Plan Amendments Act (MPPAA), 29 U.S.C. §§ 1381–1453 (1985), Central States Southeast and Southwest Areas Pension Fund appeals from the district court's [1] denial of its motion to dismiss and the district court's grant of summary judgment to Rheem Manufacturing Company. We affirm.

## I. BACKGROUND

In July 1965, Rheem Manufacturing Company, a manufacturer of heating and air conditioning equipment based in Fort Smith, Arkansas, entered into a lease agreement (Agreement) with Knight Associates, whereby Rheem leased approximately fifteen truck drivers from Knight to distribute its products. Under the Agreement, Knight provided truck drivers to Rheem, and Rheem paid Knight weekly for the total number of drivers and miles driven.

---

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

Knight's responsibilities under the Agreement included contributions to Central States Southeast and Southwest Area Pension Fund (Central States), pursuant to a collective bargaining agreement with the drivers' union. The Agreement stated that "the drivers are, and will continue to be, [Knight's] employees. [Knight] will pay the drivers' wages and provide all of the benefits required by any applicable collective bargaining agreement which may be in effect...." Driver Service Agreement, July 1, 1965, at 3. Knight, and not Rheem, was signatory to the collective bargaining agreement establishing the obligation to contribute to Central States. Rheem's responsibilities under the Agreement included selection and supervision of the drivers and negotiations with the union regarding the terms and conditions of the drivers' work.

In keeping with the terms of the Agreement, during the period in which Rheem was leasing drivers from Knight, Knight made contributions to Central States. In June 1991, Rheem terminated its Agreement with Knight, and thereafter entered into a similar business relationship with Leaseway Personnel Corporation. Knight ceased payment of its contributions to Central States, and Central States notified Knight that it had incurred withdrawal liability, under 29 U.S.C. § 1381 (1985), in the amount of $80,435.96.[2] Knight, in liquidation, paid only $21,182. Central States then sought to collect the balance of the withdrawal liability from Rheem. Rheem asserted that it was not an "employer" under the MPPAA, and therefore not statutorily responsible for withdrawal liability. Central States asserted that Rheem was a joint employer with Knight, and therefore was responsible for withdrawal liability.

This conflict led to Rheem filing an action for declaratory judgment in the district court on March 25, 1994, seeking a determination of whether Rheem is an "employer" under the MPPAA. Central States brought a motion to dismiss, alleging that Rheem was obliged to submit the issue to arbitration under 29 U.S.C. § 1401 (1985), which was

denied by the district court. Each party then submitted a motion for summary judgment, and the district court granted summary judgment to Rheem, finding that Rheem was not an "employer" for MPPAA purposes, and therefore could not be liable for withdrawal payment. 873 F.Supp. 173. This appeal followed.

## II. DISCUSSION

Central States appeals two issues: first, whether the district court erred in denying Central States' motion to dismiss based on a statutory arbitration requirement; second, whether the district court erred in granting summary judgment to Rheem, finding as a matter of law that Rheem was not an "employer." We address each issue in turn.

### A. Arbitration Requirement

■ Central States argues that the declaratory judgment action was improperly before the district court because the MPPAA requires that: "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1).

Several of our sister circuits have stated that the determination of whether an entity ever became an employer under the MPPAA is an issue properly addressed by a district court prior to arbitration of any remaining issues:

> [There is] a third narrow exception to the arbitration requirement. This exception allows a company to bypass arbitration for the limited purpose of determining whether it is an "employer" within the meaning of section 1401(a)(1). This conclusion follows from the language of that section, which states that arbitration shall govern disputes between an "employer" and the plan sponsor. Since only an "employer" is required to arbitrate, the district court may address this threshold question before arbitration.

---

**2.** Section 1381(a) states that: "If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability."

*Mason & Dixon Tank Lines, Inc. v. Central States Pension Fund,* 852 F.2d 156, 167 (6th Cir.1988) (collecting cases); *see also Teamsters Joint Council No. 83 v. CenTra, Inc.,* 947 F.2d 115, 122 (4th Cir.1991); *Banner Indus. v. Central States Pension Fund,* 875 F.2d 1285, 1293 (7th Cir.), *cert. denied,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989); *Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc.—Pension Fund v. Centra,* 983 F.2d 495, 501 (3d Cir.1992).[3]

The sole question presented to the district court by Rheem's action for declaratory judgment was whether Rheem was an "employer" under the MPPAA.[4] We agree with the reasoning of the Sixth Circuit, quoted above. Section 1401 applies to disputes between employers and plan sponsors; since the district court was deciding *whether* Rheem was, or ever had been, an employer, § 1401 does not apply to Rheem's action for declaratory judgment. We therefore find that the district court did not err in denying Central States' motion to dismiss.

## B. "Employer" Status Under the MPPAA

 Central States argues that the district court erred in granting summary judgment to Rheem, finding that Rheem was not an "employer" for MPPAA purposes, and therefore could not be liable for withdrawal payment under § 1381. We review a district court's grant of summary judgment applying the same standard as the district court. *Berdella v. Delo,* 972 F.2d 204, 209 (8th Cir. 1992). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a

matter of law. *Id.* (citing Fed.R.Civ.P. 56(c)).

The MPPAA does not provide a definition of "employer." In *Seaway Port Authority v. Duluth–Superior ILA Marine Ass'n Restated Pension Plan,* 920 F.2d 503 (8th Cir. 1990), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991), a panel of this Court, in a matter of first impression in this circuit, established a definition of "employer" for MPPAA purposes. We adhere to that definition in the instant case, and find that the district court correctly found that Rheem was not an employer under the MPPAA.

 In *Seaway,* we joined the Second and Eleventh Circuits in holding that, for MPPAA purposes, the definition of "employer" is " 'a person who is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants.' " *Id.* at 507 (quoting *Korea Shipping Corp. v. New York Shipping Ass'n—Int'l Longshoremen's Ass'n Pension Trust Fund,* 880 F.2d 1531, 1537 (2d Cir. 1989)); *see Carriers Container Council, Inc. v. Mobile Steamship Ass'n—Int'l Longshoreman's Ass'n, AFL–CIO Pension Plan & Trust,* 896 F.2d 1330, 1343 (11th Cir.), *cert. denied,* 498 U.S. 926, 111 S.Ct. 308, 112 L.Ed.2d 261 (1990). In applying this definition, "the appropriate inquiry is whether the alleged employer had an obligation to contribute and what was the nature of that obligation." *Seaway,* 920 F.2d at 508. We found, after review of the case law applying the *Korea Shipping* definition of "employer," that there was "one fact common to all of the parties held subject to withdrawal liability; *they were contractually bound to make pension contributions,* either in collective bargaining agreements, general cargo agree-

---

3. Several courts have held that this exception to the arbitration requirement only applies when the entity asserting that it is not an employer asserts that it has never been an employer in the MPPAA context, or that it did not become an employer until after the withdrawal liability had been acquired. *See, e.g., Teamsters,* 947 F.2d at 123 ("as long as a withdrawing entity was a part of the control group of an employer subject to the MPPAA *at some point in time,* and where the issues in dispute fall under provisions explicitly designed for arbitration, the arbitration procedure must be followed"); *Trucking Employees of N. Jersey,* 983 F.2d at 501. Rheem asserts that it

has never been an employer, and we do not address the question of arbitration in the context of an entity asserting that it was, but no longer is, an employer.

4. Central States asserts that the court found that Rheem was a joint employer in its memorandum opinion granting Rheem's motion for summary judgment. On the contrary, the opinion explicitly states that "the court emphasizes that it has not made any ruling that Knight and Rheem are joint employers...." 873 F.Supp. at 177–78.

ments, or shipping association agreements." *Id.* at 509. The nature of the obligation to contribute establishing an entity as an "employer" for MPPAA purposes, therefore, is contractual, and the party who is signatory to a contract creating the obligation to contribute is the "employer" for purposes of establishing withdrawal liability.[5]

In *Seaway,* we found that SPAD was not an employer because it had not signed a contract obliging it to contribute to the pension fund:

> In this case, it is undisputed that SPAD did not sign any collective bargaining agreements. Nor did it sign a shipping association agreement. Nor did SPAD sign the pension plan's trust agreement that established the contribution duty during the relevant period. Our review of the record does not reveal any contracts SPAD signed explicitly obligating it to make pension contributions. Thus, applying the relevant case law, SPAD is not obligated to contribute and is not an employer under the MPPAA.

*Seaway,* 920 F.2d at 509 (footnote omitted). The facts in *Seaway* are comparable to those in the instant case, and the holding in *Seaway* is directly applicable here. Knight, and not Rheem, was contractually bound to make pension contributions to Central States. The Agreement between Knight and Rheem stated that Knight would provide the benefits required by any collective bargaining agreement, and Knight, and not Rheem, signed the collective bargaining agreement creating the obligation to contribute to Central States. Further, Knight, and not Rheem, signed the trust agreement with Central States creating the obligation to make payments to Central States. Central States directs us to no docu-

ment that could create a contractual obligation for Rheem to contribute to Central States.

Moreover, in keeping with these obligations, Knight made payments to Central States throughout Knight's association with Rheem. It was not until after Central States discovered that Knight was unable to pay the withdrawal liability that Central States notified Rheem of its belief that Rheem was liable for the withdrawal payment.

We find that *Seaway* is controlling in this case, and that, as a matter of law, Rheem was not contractually obliged to make contributions to Central States. Thus, under the *Seaway* definition of "employer" under the MPPAA, Rheem was not an employer. The district court did not err in granting summary judgment to Rheem on the grounds that Rheem was not an employer as a matter of law.

## III. CONCLUSION

For the above reasons, we affirm the district court's dismissal of Central States' motion to dismiss, and the grant of Rheem's motion for summary judgment.

---

5. In *Seaway,* we considered the possibility that entities would intentionally shift withdrawal liability:

> [The pension trustees] argue that true employers will simply require their managing agents to sign all relevant agreements, and then claim no obligation to contribute when the agent withdraws. There is nothing inherently improper in this, however, because parties may contract as they see fit, within certain limitations. A pension plan's proper recourse in such a situation is to assess withdrawal liability against the managing agent.

*Seaway,* 920 F.2d at 510.

> We left open, in *Seaway,* the question of whether in the case of "an insolvent shell agent and a potentially fraudulent arrangement," we would look behind the contractual obligor to the "true employer." *Id.* Central States explicitly "does not argue here that Rheem's relationship with Knight was a sham." Appellant's Br. at 14 n. 8. We therefore continue to leave that issue for another day.