**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Robert J. Baker, Arthur H. Bunte, Jr., R. Jerry Cook, R.V. Pulliam, Sr., Jerry Younger, Joe Orrie, Ray Cash, and Howard McDougall, trustees, Plaintiffs,**

v.

**PROGRESSIVE DRIVER SERVICES, INC., Defendant/Third Party Plaintiff,**

v.

**REYNOLDS METALS COMPANY, Third Party Defendant.**

No. 95 C 4084.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 1, 1996.

Margaret Mary Fahrenbach, Terence George Craig, Central States Law Department, Rosemont, IL, for plaintiffs.

Robert Earl Mann, Michael Ives Richardson, Edward Nathan Druck, Franczek, Sullivan, Mann, Crement, Hein, Relias, P.C., Chicago, IL, for defendant/third-party plaintiff.

James W. Gladden, Jr., Joan Edmonds Brophy, Eric S. Dreiband, Mayer, Brown & Platt, Chicago, IL, for third-party defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Plaintiffs have sued Defendant Progressive Driver Services, Inc. ("Progressive") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended by* the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). 29 U.S.C. § 1001 *et seq.* (1982). Plaintiffs seek collection of withdrawal liability, interest, and penalties allegedly incurred by Defendant as a result of withdrawal from a multiemployer pension plan. Progressive brought a Third Party Complaint against Reynolds Metals Company for contribution, indemnity, and damages. Progressive alleges that Reynolds was the employer of the plan participants and that pursuant to an oral contract it provided drivers, support, and administrative services for Reynolds' motor carrier and other operations. Progressive further alleges that pursuant to this contract it became a signatory to the relevant collective bargaining agreement that required contributions to the Central States, Southeast and Southwest Areas Pension Fund. Before the Court is Plaintiffs' Motion for Summary Judgment.

## BACKGROUND

The pertinent undisputed facts are as follows. Plaintiff Central States, Southeast and Southwest Areas Pension Fund ("the Fund") is a multiemployer pension plan within the meaning of ERISA. The Fund determined that on or about April 30, 1994 Progressive permanently ceased to have an obligation to contribute to the Fund and that Progressive effected a "complete withdrawal" from the Fund within the meaning of Section 4203(a)(1) of ERISA, 29 U.S.C. § 1385(a)(1). On or about December 10, 1994, Progressive received a notice and demand issued by the Fund for payment of withdrawal liability in the amount of $92,194.80. On or about January 23, 1995, Progressive received a notice from the Fund that its withdrawal liability payments were past due, warning of the consequences of failure to pay such liability. By letter dated February 28, 1995, Progressive requested that the Fund review its determination. On or about April 27, 1995, Progressive received the Fund's response to its review request, in which the Fund refused to revise its withdrawal liability determination. Progressive did not timely initiate arbitration pursuant to Section 4221(a)(1) of ERISA and has failed to make any withdrawal liability payments.

## ANALYSIS

Summary judgment is appropriate against a party who fails to make a sufficient showing to establish the existence of an essential element to its case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying the portions of the record that it believes demonstrate the absence of a genuine issue

of material fact and entitle it to judgment as a matter of law. *Id.* at 323, 106 S.Ct. at 2552; *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The court must view all of the evidence submitted in the light most favorable to the nonmoving party. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608.

Once a properly supported motion for summary judgment has been filed, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). An issue of fact is genuine only if a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. Only facts that might affect the outcome of the case are material. *Id.* Therefore, if the evidence provided by the nonmoving party is merely colorable or is not significantly probative, the court may grant summary judgment. *Id.* at 249–50, 106 S.Ct. at 2510–11.

The Seventh Circuit has delineated the statutory scheme regarding withdrawal liability. "The Multiemployer Pension Plan Amendments to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, require that when an employer withdraws from a multiemployer pension plan governed by ERISA, the plan assesses a withdrawal liability against him, 29 U.S.C. § 1396, so that the financial burden of his employees' vested pension benefits will not be shifted to the other employers in the plan and, ultimately, to the Pension Benefit Guaranty Corporation, which insures such benefits. To trigger application of the statute, the pension plan must issue a notice, and a demand for payment, of withdrawal liability to the employer. § 1399(b). If the employer wants to contest the assessment he must first complain informally to the plan within 90 days. § 1399(b)(2)(A). If he obtains no satisfaction from this mandatory conciliation procedure he must initiate arbitration—the method prescribed by the statute for resolving disputes concerning assessments of withdrawal liability.... § 1401(a)(1). Should the employer fail to request arbitration within the deadline the amount of withdrawal liability assessed by the plan becomes due and owing and the plan can (as here) sue to collect it. § 1401(b)." *Central States, Southeast & Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1371–72 (7th Cir.1992). Specifically, Section 1401(a)(1) provides, in pertinent part: "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." The Seventh Circuit remarked that "the requirement [that any dispute between the employer and the plan be resolved by arbitration] presupposes a determination that the dispute is with an 'employer.' " *Id.* at 1372.

█ As the undisputed facts show, the sequence of events that entitles a plan to sue and collect the withdrawal liability it has assessed against an employer has occurred here. However, Progressive denies that it is an employer for purposes of the MPPAA and, thus, contends that it is not subject to the arbitration requirement. Plaintiffs now seek summary judgment, arguing that Progressive's failure to initiate arbitration precludes it from disputing liability. Plaintiffs contend that *Slotky* so holds. To the contrary, the *Slotky* court merely opined: "it can be argued that the statutory policy of encouraging the prompt, nonjudicial resolution of disputes over withdrawal liability requires the alleged member of a controlled group to institute arbitration on penalty of losing all opportunity to contest his membership." *Id.* at 1373. The Seventh Circuit then stated, "But this we need not decide," because the plan did not argue waiver and the issue is not jurisdictional. *Id.*[1]

Nevertheless, the Seventh Circuit provided guidance in *Slotky*, stating "we may assume that ... the arbitrator can decide the

---

**1.** Notably, no meaningful distinction arises where, as here, the defendant is an alleged employer instead of an alleged member of a controlled group, as the purpose of the controlled group inquiry is to determine whether an entity is an employer for purposes of ERISA. 29 U.S.C. § 1301(b).

issue of controlled group membership." *Id.* However, the court found "that the issue of membership in a controlled group cannot be within *exclusive* arbitral jurisdiction," but clarified that "[i]t does not follow that a person can always sit back and wait to be sued for withdrawal liability and take his chances on the court's deciding the issue in his favor." *Id.* Finally, the *Slotky* court made clear that if a court endeavors to determine the issue of controlled group membership (*i.e.,* employer status) and finds that the defendant is an employer then the employer will "have waived the issues that are reserved for arbitration." *Id.*

In explaining that the employer status issue is not within the arbitrator's exclusive jurisdiction, the Seventh Circuit relied upon *Banner Industries, Inc. v. Central States, Southeast & Southwest Areas Pension Fund,* 875 F.2d 1285 (7th Cir.1989), *cert. denied,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989). In *Banner,* the court distinguished the issue of "whether one ever became an employer for MPPAA purposes" from "the question of whether one [who concedes to have once been an employer] *remains* an employer as of a withdrawal date." *Id.* at 1291, 1293. The latter issue, the court held, is for the arbitrator to decide, as it arises under Section 1392(c) and Section 1401 provides that all disputes concerning determinations under Sections 1381–1399 shall be resolved via arbitration. *Id.* at 1292–93. In reaching this conclusion, the court emphasized the distinction and remarked: "Courts that have resolved employer status questions before arbitration have confronted entities which, unlike [the putative employer in *Banner*], never had been employers subject to the MPPAA, and which therefore *legitimately challenged application of the MPPAA dispute resolution process to them.*" *Id.* at 1293 (emphasis added).

The Second, Third, Fourth, Sixth, and Eighth Circuits have held that because Section 1401 only requires arbitration for disputes between an "employer" and a plan, whether a defendant is an employer for purposes of withdrawal liability "is properly for the courts, not an arbitrator, to determine." *Bowers v. Transportacion Maritima Mexi-*

*cana, S.A.,* 901 F.2d 258, 261 (2d Cir.1990); *see also Rheem Mfg. Co. v. Central States, Southeast & Southwest Areas Pension Fund,* 63 F.3d 703 (8th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 1016, 134 L.Ed.2d 96 (1995); *Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc.—Pension Fund v. Centra,* 983 F.2d 495, 501 (3d Cir. 1992); *Teamsters Joint Council No. 83 v. CenTra, Inc.,* 947 F.2d 115, 122 (4th Cir. 1991); *Korea Shipping Corp. v. New York Shipping Ass'n–Int'l Longshoremen's Ass'n Pension Trust Fund,* 880 F.2d 1531, 1536 (2d Cir.1989); *Mason & Dixon Tank Lines, Inc. v. Central States, Southeast & Southwest Areas Pension Fund,* 852 F.2d 156, 167 (6th Cir.1988).

■ In light of the *Banner* dicta this Court follows these Circuits and holds that the issue of whether Progressive was ever an employer is properly before it to decide, because, as the district court found in *Banner,* "its resolution decides the arbitrator's authority over a dispute." *Banner,* 875 F.2d at 1291. The Court does not deem the equivocal language of *Slotky* to require otherwise, namely, "we may assume" and "it can be argued," particularly in light of its reliance upon *Banner.* 956 F.2d at 1373. Indeed, in *Rheem,* the Eighth Circuit cited *Banner* as "stat[ing] that the determination of whether an entity ever became an employer under the MPPAA is an issue properly addressed by a district court prior to arbitration of any remaining issues." 63 F.3d at 705. Moreover, the MPPAA does not define "employer," such that a dispute of employer status is not one concerning a determination made under Sections 1381–1399. However, as *Slotky* illustrates, a putative employer who, like Progressive, sits back and waits to be sued takes its chances; if the court finds that it is an employer it has "waived the issues that are reserved for arbitration." 956 F.2d at 1373. Rather, a putative employer who seeks to dispute that status in court must file a declaratory judgment action within the time for arbitration in order to preserve the arbitration issues. *Rheem,* 63 F.3d at 705–06; *Banner,* 875 F.2d at 1293–94; *IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.,* 788 F.2d 118, 128–29 (3d Cir.1986).

■ Consequently, the Court must determine whether a genuine issue of material fact exists as to Progressive's employer status. The Seventh Circuit has explained that several circuits "define an employer for purposes of MPPAA as a person who is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants. Therefore, the appropriate inquiry is whether the alleged employer had an obligation to contribute as well as the nature of that obligation." *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.,* 85 F.3d 1282, 1287 (7th Cir.1996) (internal quotation marks and citations omitted). Further, in *Central Transport* the Seventh Circuit stated "that the obligation to contribute [is] contractual, and therefore the party 'who is signatory to a contract creating the obligation to contribute is the "employer" for purposes of establishing withdrawal liability.'" *Id.* (quoting with approval *Rheem,* 63 F.3d at 707).

In the present case, it is undisputed that Progressive was the signatory to a collective bargaining agreement ("CBA") with Teamsters Local 402, which required contributions to the Central States, Southeast and Southwest Areas Pension Fund. (Aff. of Robert Lee ¶ 4; Answer ¶ 7). Progressive was the only employer referred to in the Master Agreement with the Union and the Participation agreement with the Pension Fund. Nevertheless, Progressive contends that it has created a genuine issue of material fact by proffering the following evidence: Pursuant to Progressive's contract with Reynolds "and as the agent of Reynolds, Progressive became a signatory." Further,

> Pursuant to the agreement, Reynolds exercised complete dominion and control over drivers supplied by Progressive, directed and maintained ultimate authority with regard to all matters relating to the Union including negotiation and execution of the collective bargaining agreement and approved and paid all wages, fringe benefits and other benefits to or for the benefit of the drivers including, without limitation, all payments made to the Pension Fund.

> Pursuant to the Agreement, Reynolds further controlled the hiring of drivers and determined their schedules, points of origin, routes, destinations, assignments and work and safety rules.

> Pursuant to the Agreement, Reynolds was ultimately responsible for any and all expenses relating to the drivers provided by Progressive including, without limitation, all contributions to the Pension Fund.

> Contributions to the Pension Fund for the employees at issue continued to be made after the termination of the Agreement between Reynolds and Progressive.

(Aff. of Robert Lee ¶¶ 5–7 & 9). Thus, argues Progressive, a genuine issue of material fact precludes summary judgment because "factual issues exist as to the level of control [Progressive and Reynolds] had over the employees and the proper apportionment of liability." (Resp. p. 6). Progressive further argues that a withdrawal, as defined in Section 1383, has not occurred "because Reynolds is the 'employer' and has continued to contribute on behalf of the employees at issue." (Resp. p. 7).

■ Both arguments fail. First, *Central Transport* compels summary judgment in favor of Plaintiffs. It is undisputed that Progressive is the signatory to the CBA, which creates the obligation to contribute; this fact renders it an employer for MPPAA purposes, who is thus subject to Section 1401's arbitration requirement. 85 F.3d at 1287. Whether the evidence proffered by Progressive demonstrates that Reynolds also had a contractual obligation to contribute (*i.e.,* is a joint employer) is irrelevant to the determination of whether Progressive was an employer for MPPAA purposes. Second, *Slotky* compels the conclusion that Progressive's failure to seek arbitration (or a declaratory judgment within the time for arbitration as to its employer status) precludes it from disputing whether a withdrawal has occurred, an issue reserved for arbitration by Section 1401 as a dispute made under Section 1383. 29 U.S.C. § 1401(a)(1).

## CONCLUSION

Because the absence of a genuine issue of material fact entitles Plaintiffs to judgment

as a matter of law, the Court GRANTS Plaintiffs' Motion for Summary Judgment, awarding Plaintiffs the unpaid contribution, interest thereon, fees, costs, and an amount equal to the greater of interest on the unpaid contributions or liquidated damages provided for under the plan in an amount not in excess of 20% of the unpaid contributions. 29 U.S.C. §§ 1132(g)(2) & 1451(b). Plaintiffs shall submit a request and supporting affidavits as to these amounts and a draft judgment order within 21 calendar days of the date of this Order. Defendants may respond, if they wish, within 14 calendar days thereafter. The Court will then promptly enter the judgment order on Plaintiffs' claim.