# In the

# United States Court of Appeals

## For the Seventh Circuit

————

No. 04-2321

TRANSPERSONNEL, INC.,

*Plaintiff-Appellee,*

v.

ROADWAY EXPRESS, INC.,
a Delaware Corporation,

*Defendant-Appellant.*

————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 611—**Amy J. St. Eve**, *Judge.*

————

ARGUED NOVEMBER 29, 2004—DECIDED AUGUST 29, 2005

————

Before KANNE, EVANS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 by Transpersonnel, Inc., an employer of truck drivers, against Roadway Express, Inc., a motor carrier that leased drivers from Transpersonnel. The two-count complaint sought judicial declarations that: (1) Roadway was an "employer" of the leased drivers for purposes of potential withdrawal liability under a multiemployer pension plan governed by the Employee Retirement Income Security Act ("ERISA"), pursuant to the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381, et seq.; and (2) Roadway was required to indemnify Transpersonnel for

potential future liability Transpersonnel may incur pursu-
ant to the MPPAA. The district court granted summary
judgment in favor of Transpersonnel with respect to the
first question and declined to decide the second because it
was either premature or moot. We reverse.

## I. Background

Transpersonnel employs truck drivers and Roadway is
a motor carrier. In 1986 the parties entered into a writ-
ten agreement under which Roadway would lease drivers
employed by Transpersonnel for use in Roadway's trucking
operation. At the time the lease was executed, Trans-
personnel, in its capacity as the employer of the leased
drivers, was party to a collective bargaining agreement
("CBA") with the Teamsters Local Union No. 705. Under the
terms of the CBA, Transpersonnel was obligated to make
contributions to the Union's pension fund on behalf of the
employees. Roadway was not a party to the CBA and had no
contractual relationship with Teamsters Local 705. The
lease agreement between Transpersonnel and Roadway
addressed the obligation to contribute to the pension fund
as follows:

> [Transpersonnel] will have sole control and responsibil-
> ity for and will be sole signatory under and connected
> with all labor negotiations, grievances, collective
> bargaining agreements and related items concerning
> drivers furnished to [Roadway] under this Agreement.
>
> . . . .
>
> [Transpersonnel] will pay the drivers' wages and
> provide any of the benefits required by any applicable
> bargaining agreement between [Transpersonnel] and
> any authorized representative of any collective bargain-
> ing unit which may be in effect . . . .

. . . .

> [Roadway] agrees to reimburse [Transpersonnel], at cost, for all applicable employee benefits, including . . . pension fund contributions, and other similar items paid to or on behalf of [Transpersonnel's] employees as a result of a union agreement obligation . . . .

In 1992 Roadway terminated the lease agreement, and the parties apparently went their separate ways. At some point after the lease agreement was terminated, Transpersonnel ceased making contributions to the pension fund, although the record does not disclose the reason for the discontinuation or precisely when payments stopped. Ten years after the lease agreement was terminated, the pension fund issued a demand on Transpersonnel for partial withdrawal liability in the amount of $441,846.96, pursuant to the MPPAA, 29 U.S.C. §§ 1381, 1382. Withdrawal liability is the amount owed a pension plan by an employer which reduces or ceases its plan contributions prior to fully funding the liabilities of the plan attributable to the employer. 29 U.S.C. §§ 1383, 1385. The pension fund has made no claim against Roadway and has never suggested that Roadway bears any withdrawal liability under the MPPAA. Transpersonnel has denied liability to the pension fund and requested arbitration of the pension fund's demand pursuant to 29 U.S.C. § 1401(a)(1). Arbitration has not yet taken place, and the issues of whether Transpersonnel has incurred withdrawal liability and, if so, the amount of that liability, have yet to be determined.

Pending arbitration, Transpersonnel filed a two-count complaint seeking declaratory judgments that Roadway was an "employer" of the personnel at issue for purposes of potential withdrawal liability under the MPPAA and that Roadway was contractually obligated to reimburse Transpersonnel for any withdrawal liability that may

possibly be assessed by an arbitrator at a later date.[1]

The parties filed cross-motions for summary judgment, and the district court granted Transpersonnel's motion with respect to its claim in Count I that Roadway was an employer of the leased drivers for purposes of the MPPAA. The district court held that Transpersonnel and Roadway were "joint employers" for purposes of withdrawal liability under the MPPAA by virtue of Roadway's obligation under the lease agreement to reimburse Transpersonnel for contributions required of Transpersonnel under its CBAs with the Teamsters.

With respect to Count II of the complaint, the district court held that the claim was premature and would not ripen until an arbitrator had determined whether a withdrawal for purposes of the MPPAA had occurred and the amount, if any, of Transpersonnel's withdrawal liability. The court also held that even if the issue were ripe for adjudication, it need not address the merits because its conclusion that Roadway was an MPPAA "employer" had provided Transpersonnel all the relief it was seeking—namely, a declaration effectively compelling Roadway

---

[1] Although 29 U.S.C. § 1401(a)(1) specifies that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan . . . shall be resolved through arbitration," the threshold question of whether a company is an "employer" may be submitted to a court prior to arbitration. *See Banner Indus. v. Cent. States Pension Fund,* 875 F.2d 1285, 1293 (7th Cir.), *cert. denied,* 493 U.S. 1003 (1989); *see also Rheem Mfg. Co. v. Cent. States SE & SW Areas Pension Fund,* 63 F.3d 703, 705-06 (8th Cir. 1995); *Bd. of Tr. of Trucking Employees of North Jersey Welfare Fund, Inc.–Pension Fund v. Centra,* 983 F.2d 495, 501 (3rd Cir. 1992); *Mason & Dixon Tank Lines, Inc. v. Cent. States Pension Fund,* 852 F.2d 156, 167 (6th Cir. 1988). "Since only an 'employer' is required to arbitrate, the district court may address this threshold question before arbitration." *Mason & Dixon Tank Lines,* 852 F.2d at 167.

to participate in the arbitration. Accordingly, the district court held in the alternative that Count II was moot.[2]

## II.  Discussion

We review the district court's award of summary judgment de novo. *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1024 (7th Cir. 2003). The issue presented is whether Roadway's relationship with the leased drivers, the obligations of which were defined by its written lease agreement with Transpersonnel, brings Roadway within the ambit of an "employer" as that term is used in the MPPAA. As mentioned briefly above, the MPPAA imposes liability on an employer withdrawing from a multiemployer pension plan in order to ensure that the withdrawing employer does not leave a plan with vested pension obligations that are only partially funded. *Cent. States, SE & SW Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1014 (7th Cir. 2001). The concept of withdrawal liability attempts to avoid a situation in which the financial burden of funding vested pension benefits is shifted onto other employers participating in the multiemployer plan and, ultimately, to the Pension Benefit Guaranty Corporation. *Id.* The pertinent portion of the MPPAA provides: "If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." 29 U.S.C. § 1381(a).

The MPPAA itself does not define the word "employer," but this court has done so, adopting a definition consistent with that used in other circuits. In *Central States, SE & SW Areas Pension Fund v. Central Transport, Inc.* ("*Central Transport*"), we held that an "employer" under the MPPAA

---

[2]  The parties have not raised the dismissal of Count II on appeal, and therefore we do not address it further.

is "a person who is *obligated to contribute* to a plan either as a direct employer or in the interest of an employer of the plan's participants." 85 F.3d 1282, 1287 (7th Cir. 1996) (emphasis added) (quoting *Seaway Port Authority v. Duluth-Superior ILA Marine Ass'n Restated Pension Plan,* 920 F.2d 503, 507 (8th Cir. 1990), *cert. denied,* 501 U.S. 1218 (1991)). *See also Carriers Container Council, Inc. v. Mobile Steamship Ass'n-Int'l Longshoremen's Ass'n, AFL-CIO Pension Plan & Trust,* 896 F.2d 1330, 1343 (11th Cir.), *cert. denied,* 498 U.S. 926 (1990); *Korea Shipping Corp. v. N.Y. Shipping Ass'n-Int'l Longshoremen's Ass'n Pension Trust Fund,* 880 F.2d 1531, 1537 (2nd Cir. 1989).

We emphasized in *Central Transport* that "[t]he appropriate inquiry is whether the alleged employer had an obligation to contribute [to the pension fund] as well as the nature of that obligation." 85 F.3d at 1287. The "obligation to contribute" is created by contract: "[T]he nature of the obligation to contribute [is] contractual, and therefore the party 'who is signatory to a contract creating the obligation to contribute is the employer for purposes of establishing withdrawal liability.' " *Id.* (quoting *Rheem Mfg. Co. v. Cent. States, SE & SW Areas Pension Fund,* 63 F.3d 703, 707 (8th Cir. 1995)).

The import of the decision in *Central Transport* is clear—an "employer" for purposes of MPPAA liability is an entity that has assumed a contractual obligation to make contributions to a pension fund. In explaining this conclusion, the *Central Transport* panel drew heavily on the Eighth Circuit's decision in *Rheem*, a case involving a fact pattern very similar to that presented here. In *Rheem*, the plaintiff leased fifteen truck drivers from a lessor that was signatory to a CBA, establishing the lessor's obligation to contribute to a pension fund on behalf of the leased drivers. When the lessor withdrew from the pension fund, the fund asserted that the plaintiff lessee, by virtue of its lease agreement, was a "joint employer" for purposes of liability

under the MPPAA. The Eighth Circuit rejected the pension fund's position, holding that it was the lessor, and not the plaintiff lessee, that "was contractually bound to make pension contributions," and that it was the lessor, not the lessee, that had "signed the collective bargaining agreement creating the obligation to contribute to [the pension fund]." *Rheem*, 63 F.3d at 707. The Eighth Circuit concluded that the pension fund's attempt to impose liability on the lessee failed because there was "no document that could create a contractual obligation for Rheem to contribute to [the fund]." *Id.*

Transpersonnel contends that *Central Transport* and *Rheem* are distinguishable because here there is a provision in the lease agreement requiring Roadway as lessee to reimburse the lessor/employer Transpersonnnel for the latter's contributions to the drivers' pension fund. The district court relied upon Roadway's reimbursement obligation to conclude that Roadway was a "joint employer" for purposes of the MPPAA.

In our view, however, Roadway's reimbursement obligation does not take this case outside the core holdings of *Central Transport* and *Rheem.* Stated differently, the obligation to *reimburse* for contributions made by another is not the equivalent of an obligation to *contribute* in the first instance, and this distinction is important for purposes of *Central Transport*'s definition of "employer" under the MPPAA.

It is undisputed in this case that Roadway had no agreement whatsoever with the Union and no contractual obligation to make contributions to the pension fund. In its lease agreement with Transpersonnel, Roadway agreed to reimburse Transpersonnel for whatever pension plan contributions *Transpersonnel* made for the employees in question pursuant to its own contractual obligation to the Union. More specifically, the lease agreement states that Roadway "agrees to reimburse Lessor, at cost, for

all . . . pension fund contributions . . . paid . . . on behalf of Lessor's employees as a result of a union agreement obligation." By its terms, this obligation of reimbursement does not arise until *after* a contribution has been made, and extends only to amounts actually contributed. If Transpersonnel made pension fund contributions that were too small, or omitted contributions, the pension fund could not look to Roadway for the balance as Roadway was only contractually obligated to reimburse Transpersonnel for the actual amounts Transpersonnel contributed. Roadway would have no obligation to make up the difference because it was not contractually obligated to contribute to the pension fund in the first place. *Central States*, 85 F.3d at 1287.

Moreover, under the terms of the lease agreement, Transpersonnel retained sole responsibility for calculating the amounts it owed to the pension fund pursuant to its CBA with the Union, and Transpersonnel was required to make those payments with its own funds.[3] After the calculations were made and payments contributed, Transpersonnel could turn to Roadway for reimbursement of amounts actually paid, but the lease agreement did not permit Transpersonnel to bill Roadway for amounts owed to the fund that had not previously been paid by Transpersonnel pursuant to its contractual obligation to contribute. There is nothing in the parties' contract that would have permitted Roadway to dispute the amounts paid into the fund by Transpersonnel, to make its own calculation of the amount owed, to request a refund of erroneously large payments, to have any input into the terms of the CBA, or, most importantly, to make any payments directly

---

[3] The lease agreement provides that "Lessor will have sole control and responsibility for . . . collective bargaining agreements and related items concerning drivers furnished to Lessee under this Agreement."

to the pension fund at all.

Accordingly, we find no merit to Transpersonnel's suggestion that it was "merely a conduit" through which pension plan payments passed from Roadway to the fund.[4] The terms of the lease agreement establish that Transpersonnel was the sole entity "contractually bound to make pension contributions" for purposes of "employer" status under the MPPAA. *Rheem*, 63 F.3d at 707. Simply put, nothing in the reimbursement provision of the lease agreement imposes a contractual obligation upon Roadway to make contributions to the pension fund.

The district court cited *Central Transport* but did not apply it, concluding that the case did not answer the question of whether "more than one entity may qualify as an 'employer' under the MPPAA." But the definition of "employer" adopted in *Central Transport* is one of general application and does not turn on whether only one—or more than one—putative MPPAA "employer" is asserted. Indeed, *Rheem*—cited at length and with approval in *Central Transport*—specifically addressed whether more than one entity may qualify as an employer under the MPPAA.

As we have noted, at issue in *Rheem* was whether the lessor and lessee of truck drivers could be considered "joint

---

[4] This case is distinguishable from *Korea Shipping Corp. v. NYSA-ILA Pension Trust Fund,* 880 F.2d 1531, 1539 (2nd Cir. 1989), which involved cargo shippers that were contractually obligated to make pension fund contributions but whose contributions were processed through the New York Shipping Association ("NYSA") for "immediate transmittal" to the New York Shipping Association–International Longshoremen's Association Pension Fund. The Second Circuit held that under these circumstances the NYSA was merely a "conduit" for the shipper's contractually required pension contributions. *Id.* Here, Transpersonnel had the sole and complete contribution obligation and can hardly be characterized as a mere "conduit."

employers" for purposes of MPPAA withdrawal liability—exactly the same question presented here. *See Rheem*, 63 F.3d at 705. In *Central Transport*, this court was faced with the question of whether to disregard the corporate form of the contractual obligor as a means to ascertain the "true employer" and avoid a potentially fraudulent arrangement involving insolvent, alter ego shell corporations. *Central Transport*, 85 F.3d at 1287. We characterized the possibility of fraud as constituting an exception to the general rule established in *Rheem*, and held that in the absence of fraud allegations, an entity not contractually obligated to make contributions to a pension fund would not be considered an "employer" for purposes of withdrawal liability under the MPPAA. *Id.* In *Rheem* there was no occasion to "look behind the contractual obligor" because there were no allegations that the relationship between the lessor and lessee was a "sham" or a "potentially fraudulent arrangement." *Rheem*, 63 F.3d at 707 n.5. The same is true here.

The district court found support for its conclusion that Roadway was an MPPAA "employer" in the holdings of three district court cases, each of which predate our decision in *Central Transport* and the Eighth Circuit's decision in *Rheem*. To the extent that these cases apply a definition of an MPPAA "employer" that differs from that adopted by this court in *Central Transport*, they are inconsistent with currently applicable circuit precedent and, in any event, are not controlling here.[5]

---

[5] The cases cited by the district court were *Am. Stevedoring Corp. v. Burlington Indus., Inc.*, No. 85 C 4180, 1985 WL 5057 (N.D. Ill. Dec. 19, 1985); *Cent. Pa. Teamster's Pension Fund v. Serv. Group, Inc.*, 645 F. Supp. 996 (E.D. Pa. 1985); and *Schaffer v. Eagle Indus., Inc.*, 726 F. Supp. 113 (E.D. Pa. 1989).

(continued...)

Accordingly, for the foregoing reasons, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

A true Copy:

       Teste:

                              _____

                              *Clerk of the United States Court of*
                                    *Appeals for the Seventh Circuit*

[5] (...continued)